Louis S. Ederer
louis.ederer@aporter.com
Matthew T. Salzmann
matthew.salzmann@aporter.com
Maxwell C. Preston
maxwell.preston@aporter.com
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York  10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Plaintiffs*
*Louis Vuitton Malletier, S.A.*
*and Céline, S.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

LOUIS VUITTON MALLETIER, S.A. and CÉLINE, S.A.,

     Plaintiffs,

- against -

RED LEGEND GROUP CORP., STYLE GENERATION CORP., QIAN KANG TCHING a/k/a FRED CHEN, XYZ COMPANIES 1-10 and JOHN DOES 1-10, inclusive,

     Defendants.

------------------------------------------------------------ x

Civil Action No.

**<u>DOCUMENT FILED UNDER SEAL</u>**

**DECLARATION OF KENNETH KLUG IN SUPPORT OF PLAINTIFFS'** *EX PARTE* **APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE REGARDING A PRELIMINARY INJUNCTION, SEIZURE ORDER, TEMPORARY RESTRAINING ORDER TO FREEZE DEFENDANTS' ASSETS, EXPEDITED DISCOVERY ORDER, AND TEMPORARY SEALING ORDER**

## DECLARATION OF KENNETH KLUG

I, Kenneth Klug, declare as follows:

1. I am submitting this declaration in support of plaintiffs Louis Vuitton Malletier, S.A.'s ("Louis Vuitton") and Céline, S.A.'s ("Céline") (collectively, "Plaintiffs") *ex parte* application for (1) a temporary restraining order, (2) an order to show cause regarding a preliminary injunction, (3) a seizure order, (4) a temporary restraining order to freeze the assets of defendants Red Legend Group Corp. ("Red Legend"), Style Generation Corp. ("Style Generation"), and Qian Kang Tching a/k/a Fred Chen ("Tching") (collectively, "Defendants") pending the determination of liability and damages, (5) an order regarding expedited discovery, and (6) a temporary sealing order. I make this declaration based upon my own personal knowledge of matters detailed herein and upon my knowledge of Plaintiffs' business records, and if sworn as a witness, I could testify competently thereto.

2. Plaintiffs Louis Vuitton and Céline are high-end, luxury fashion and accessories companies that are owned by LVMH Moët Hennessy Louis Vuitton S.A. ("LVMH"), which is headquartered in France.

3. I am currently employed by LVMH as the Director of Criminal Enforcement for North America. I have held that position for over eleven (11) years. In that capacity, I represent the intellectual property interests of some of the world's most famous luxury brands, including, without limitation, Louis Vuitton, Céline, Christian Dior, Marc Jacobs, Givenchy and Emilio Pucci. I have extensive training in the identification of counterfeit products with respect to each of the foregoing brands, and routinely perform such analyses at part of my regular duties.

*Louis Vuitton and the Louis Vuitton Trademarks*

4.  Louis Vuitton was founded in Paris in 1854, and first began making trunks and luggage. Since its inception, Louis Vuitton has expanded its line of high-end, luxury goods to include leather goods (including handbags, wallets and accessories), ready-to-wear fashion, shoes, watches, jewelry, sunglasses and various other luxury goods. Louis Vuitton has consistently brought extraordinary designs to consumers worldwide, uniquely combining technical innovation with quintessential style that aims for absolute perfection. Louis Vuitton is one of the largest manufacturers and distributors of handbags in the world in terms of the number of units sold, and is one of the largest sellers of handbags in the United States.

5.  Louis Vuitton is the owner of numerous famous federally-registered trademarks, including the LOUIS VUITTON word mark and the "LV" design mark (collectively, the "Louis Vuitton Trademarks"), which are used in association with a variety of goods including, among others, handbags, wallets and accessories.

6.  The Louis Vuitton Trademarks that are relevant to this action, which are registered with the U.S. Patent and Trademark Office ("USPTO"), are listed in the table attached hereto as **Exhibit A**. True and correct copies of the U.S. trademark registration certificates for the Louis Vuitton Trademarks listed in the table attached as **Exhibit A**, are attached hereto as **Exhibit B**. The registrations for these Louis Vuitton Trademarks are in full force and effect, and many have become incontestable pursuant to 15 U.S.C. § 1065, as further evidenced by the registration certificates themselves.

7.  Louis Vuitton is the only authorized manufacturer and distributor of genuine Louis Vuitton products. In the United States, Louis Vuitton products are sold exclusively through company-owned and operated boutiques, some of which are located within high-end

2

retail stores such as Neiman Marcus and Saks Fifth Avenue, and the Louis Vuitton U.S. website at http://us.louisvuitton.com.

8. The Louis Vuitton Trademarks have each developed an outstanding reputation because of the uniform high quality of Louis Vuitton products. The Louis Vuitton Trademarks identify a unique level of high quality products originating with Louis Vuitton.

9. Louis Vuitton spends millions of dollars each year on extensive print, media and trade advertising featuring the Louis Vuitton Trademarks.

***Defendants' Promotion and Sale of Products Bearing Counterfeits of the Louis Vuitton Trademarks***

10. It has come to my attention that the Defendants in this action comprise the businesses Red Legend and Style Generation, both owned and operated by Defendant Tching and located at 119 West 30th Street, New York, New York 10001. I understand that Defendants are advertising, distributing, offering for sale and/or selling handbags and accessories that bear marks that are substantially indistinguishable from, if not identical to one or more of the Louis Vuitton Trademarks. I further understand that Defendants market, promote and sell theses handbags and accessories through e-commerce websites located at www.168estore.com and www.style-gen.com.

11. On or about October 20, 2015, Louis Vuitton was notified by the Fines, Penalties and Forfeiture Office of United States Customs and Border Protection ("Customs") that 6,680 units of counterfeit Louis Vuitton handbags, totebags, wallets and wristlets had been seized at the Port of Newark, New Jersey on October 2, 2015. Customs identified the importer of these counterfeit Louis Vuitton products (listed below) as "Red Legend Group Corp., 119 W 30th Street, New York, NY 10001":

3

| Quantity/Description of Merchandise Seized |
|---|
| 1,280 each Counterfeit "Louis Vuitton" handbags, 630 each Counterfeit "Louis Vuitton" totebags, 700 each Counterfeit "Louis Vuitton" handbags, 630 each Counterfeit "Louis Vuitton" totebags, 1,075 each Counterfeit "Louis Vuitton" totebag, 700 each Counterfeit "Louis Vuitton" handbag, 450 each Counterfeit "Louis Vuitton" wallet, 1,425 each Counterfeit "Louis Vuitton" wristlet. |

A true and correct copy of the notice Louis Vuitton received from Customs on or about October 20, 2015, is attached hereto as **Exhibit C**.

12. By letters dated October 28, 2015 and November 2, 2015, I (and a colleague) advised Red Legend that Customs had notified Louis Vuitton of the October 2, 2015 seizure, and demanded Red Legend's "immediate cessation of [its] importation and distribution of counterfeit Louis Vuitton product, as well as any other misuse of [Louis Vuitton's] trademarks." True and correct copies of Louis Vuitton's October 28, 2015 and November 2, 2015 letters to Red Legend are attached hereto as **Exhibit D**.

13. By letter dated November 10, 2015, Tching (a/k/a Fred Chen) acknowledged receipt of Louis Vuitton's November 2, 2015 letter, and stated that he was "shocked and surprised to learn that [Red Legend's] shipment contained any products resembling [Louis Vuitton] products." A true and correct copy of Tching's November 10, 2015 letter is attached hereto as **Exhibit E**.

14. Since that time, I have retained investigators to explore Defendants' counterfeiting activities with respect to Louis Vuitton products. These investigators have observed counterfeit "Louis Vuitton" products being offered for sale by Red Legend and/or Style Generation, and have purchased such products, as described in the accompanying Declarations of Timothy Forman and James Ricaurte. The "Louis Vuitton" handbags and accessories purchased from Defendants are hereinafter referred to as the "Counterfeit Louis Vuitton Products."

4

15. The investigators forwarded the Counterfeit Louis Vuitton Products bearing counterfeits of the Louis Vuitton Trademarks to Louis Vuitton. I have examined the Counterfeit Louis Vuitton Products on behalf of Louis Vuitton, and determined that none of them are genuine Louis Vuitton products.

16. Although similar in appearance, the material and hardware used on the Counterfeit Louis Vuitton Products sold by Defendants are far inferior in quality to the materials and hardware used by Louis Vuitton.

17. Based on my examination, Louis Vuitton confirms that the Counterfeit Louis Vuitton Products Defendants sold to Louis Vuitton's investigators are non-genuine counterfeit goods for the following reasons, among others:

    a. The packaging is inconsistent with that of genuine Louis Vuitton products;

    b. The materials and hardware are inconsistent with that of genuine Louis Vuitton products;

    c. The stitching is inconsistent with that of genuine Louis Vuitton products;

    d. The dust bags are inconsistent with that of genuine Louis Vuitton products; and

    e. The use/placement of the Louis Vuitton Trademarks on the counterfeit products is inconsistent with that of genuine Louis Vuitton products.

Photographs of representative examples of the Counterfeit Louis Vuitton Products are attached hereto as **Exhibit F**.

18. For decades, the LOUIS VUITTON brand name and the Louis Vuitton Trademarks have symbolized the highest standard of workmanship and quality luxury products. The quality and durability of Louis Vuitton products is legendary. Because of Louis Vuitton's

continued and consistent use of one or more of the Louis Vuitton Trademarks on its products, Louis Vuitton products are universally recognized as originating from a single source—Louis Vuitton.

19. Should Defendants be allowed to continue to use counterfeits of the Louis Vuitton Trademarks and to sell the Counterfeit Louis Vuitton Products, the strength of the Louis Vuitton Trademarks will be severely diminished. Once a third party is allowed to use a confusingly similar mark, others will quickly follow suit, and the Louis Vuitton Trademarks will soon lose their strength as indicators of source for high-end, high quality products.

20. The Louis Vuitton Trademarks are of vital importance to Louis Vuitton, and Louis Vuitton will suffer irreparable harm if any third parties, including the Defendants, are allowed to continue to offer for sale and sell counterfeit products bearing marks that are identical or confusingly similar to the Louis Vuitton Trademarks.

21. Louis Vuitton strictly controls the use of the Louis Vuitton Trademarks, and does not permit third parties to use such marks without authorization. Defendants do not have, nor have they ever had, the right or authority to use the Louis Vuitton Trademarks for any purpose.

22. As a result of the Counterfeit Louis Vuitton Products being offered for sale and sold by Defendants, Louis Vuitton has likely experienced decreased sales revenue. More importantly, however, irreparable damage to the goodwill symbolized by the Louis Vuitton Trademarks, and to Louis Vuitton's stellar reputation among consumers, has undoubtedly already occurred, and is highly likely to continue unless Defendants' counterfeiting and infringing activity asserted in the Complaint is immediately stopped.

23. While the quality of the Counterfeit Louis Vuitton Products is inferior to genuine Louis Vuitton products, the appearance of the Counterfeit Louis Vuitton Products is such that a

consumer could easily be misled into believing that such products are genuine Louis Vuitton products, especially when such products are encountered in the post-sale environment.

*Céline and the Céline Trademarks*

24. Céline, founded in 1945 and owned by LVMH since 1996, is a modern luxury brand offering a collection of ready-to-wear clothing, leather goods, shoes and accessories. Céline is well known for its iconic Luggage and Trapeze handbags, which are reoccurring and essential parts of the Céline collection. Céline offers consumers creative, high quality products for women searching for distinctive style and strong vision.

25. Céline is the owner of numerous famous federally-registered trademarks, including the CÉLINE word mark and the design mark consisting of the three-dimensional configuration of its "Luggage" handbag (collectively, the "Céline Trademarks").

26. The Céline Trademarks that are relevant to this action, which are registered with the USPTO, are listed in the table attached hereto as **Exhibit G**. True and correct copies of the U.S. trademark registration certificates for the Céline Trademarks listed in table attached as **Exhibit G**, are attached hereto as **Exhibit H**. The registrations for these Céline Trademarks are in full force and effect, and the registrations for the CÉLINE trademark have become incontestable pursuant to 15 U.S.C. § 1065, as further evidenced by the registration certificates themselves.

27. Céline is the only authorized manufacturer and distributor of genuine Céline products. In the United States, Céline products are sold exclusively through Céline stores and select high-end department stores and boutiques, such as Barneys New York, Saks Fifth Avenue and Jeffrey.

28. The Céline Trademarks have each developed an outstanding reputation because of the uniform high quality of Céline products. The Céline Trademarks identify a unique level of high quality products originating with Céline.

29. Céline spends millions of dollars each year on extensive print, media and trade advertising featuring the Céline Trademarks.

*Defendants' Promotion and Sale of Products Bearing Counterfeits of the Céline Trademarks*

30. It has also come to my attention that Defendants are advertising, distributing, offering for sale and/or selling handbags that bear marks that are substantially indistinguishable from, if not identical to the Céline Trademarks, many of which are deliberate copies of the shape and design of Céline's iconic, federally-registered Luggage handbag design.

31. I have retained investigators to explore Defendants' counterfeiting activities with respect to Céline products. These investigators have observed counterfeit "Céline" products being offered for sale by Red Legend and/or Style Generation, and have purchased such products, as described in the accompanying Declarations of Timothy Forman and James Ricaurte. The "Céline" handbags purchased from Defendants are hereinafter referred to as the "Counterfeit Céline Products."

32. The investigators forwarded the Counterfeit Céline Products bearing counterfeits of the Céline Trademarks to Céline. I have examined the Counterfeit Céline Products on behalf of Céline and determined that none of them are genuine Céline products.

33. Although similar in appearance, the material and hardware used on the Counterfeit Céline Products sold by Defendants are far inferior in quality to the materials and hardware used by Céline.

34. Based on my examination, Céline confirms that the Counterfeit Céline Products Defendants sold to Céline's investigators are non-genuine counterfeit goods for the following reasons, among others:

    a. The colorways are inconsistent with genuine Céline products;

    b. The interiors are inconsistent with genuine Céline products;

    c. The stitching is inconsistent with genuine Céline products;

    d. The leather/materials are inconsistent with genuine Céline products; and

    e. The dust bags are inconsistent with that of genuine Céline products.

Photographs of representative examples of the Counterfeit Céline Products are attached hereto as **Exhibit I**.

35. The CÉLINE brand name and the Céline Trademarks symbolize the highest standard of workmanship and quality luxury products. The quality and durability of Céline products is highly regarded. Because of Céline's continued and consistent use of the Céline Trademarks on its products, Céline products are universally recognized as originating from a single source—Céline.

36. Should Defendants be allowed to continue to use counterfeits of the Céline Trademarks and to sell the Counterfeit Céline Products, the strength of the Céline Trademarks will be severely diminished. Once a third party is allowed to use a confusingly similar mark, others will quickly follow suit, and the Céline Trademarks will soon lose their strength as indicators of source for high-end, high quality products.

37. The Céline Trademarks are of vital importance to Céline, and Céline will suffer irreparable harm if any third parties, including the Defendants, are allowed to continue offering

for sale and selling counterfeit products bearing marks that are identical or confusingly similar to the Céline Trademarks.

38. Céline strictly controls the use of the Céline Trademarks, and does not permit third parties to use such marks without authorization. Defendants do not have, nor have they ever had, the right or authority to use the Céline Trademarks for any purpose.

39. As a result of the Counterfeit Céline Products being offered for sale by Defendants, Céline has likely experienced decreased sales revenue. More importantly, however, irreparable damage to the goodwill symbolized by the Céline Trademarks, and to Céline's stellar reputation among consumers, has undoubtedly already occurred, and is highly likely to continue unless the counterfeiting and infringing activity asserted in the Complaint is immediately stopped.

40. While the quality of the Counterfeit Céline Products is inferior to genuine Céline products, the appearance of the Counterfeit Céline Products is such that a consumer could easily be misled into believing that such products are genuine Céline products, especially when such products are encountered in the post-sale environment.

41. Due to the popularity of Plaintiffs' Louis Vuitton Trademarks and Céline Trademarks used on their respective high quality, luxury goods, products bearing counterfeits and/or infringements of these trademarks are being manufactured, imported, distributed and sold throughout the United States in unprecedented numbers. Louis Vuitton and Céline have each undertaken, a great expense, substantial efforts to prohibit such counterfeits and infringements through investigations, the service of cease-and-desist letters, and the commencement of civil proceedings such as this one.

42. Unless the Court grants the requested relief, Plaintiffs, their retail stores and/or sellers, and their retail customers will continue to suffer extensive damage and irreparable harm as a result of Defendants' activities.

43. In my experience, persons or entities who offer for sale and/or sell counterfeit goods routinely ignore restraining orders, attempt to conceal their assets, and attempt to destroy or conceal evidence of their wrongdoing, such as counterfeit goods, equipment for manufacturing or assembling such goods (such as heat-stamps used to emboss counterfeit marks onto goods), and related records. I have no doubt that, if Defendants were given notice of an action against them, they would immediately take such steps, which would undermine the judicial process and render Plaintiffs' right to an equitable accounting meaningless.

I declare under penalty of perjury under the laws of the United States that all of the foregoing is true and correct.

Executed this __th day of October 2016, at New York, New York.

_____
Kenneth Klug